Please call the next case. 212-74 Hain v. Workers' Compensation Comm'n Counsel, you may proceed. Good morning, Justices. May it please the Court, Counsel. We all know that it is the job of the Commission and the arbitrator to review the evidence in the record and to weigh the credibility of witnesses. From there, they make findings of fact and reach conclusions of law. However, the arbitrator's decision in this case, which was adopted in full by the Commission, did not include a finding of fact. There was no real weighing of the evidence or the credibility of the witnesses. And so we must rely on the facts discussed in the various sections of the conclusions of law to almost speculate as to what the arbitrator and the Commission's findings of fact in their entirety were. However, when we take a look at the facts that are discussed in the various sections of the conclusions of law, it is our position that the facts in and of themselves are inconsistent. And they're conflicting. And more importantly, they're unsupported by the evidence in the record. And therefore, we submit that because of these conflicting facts, that the decision of the Commission as a whole was against the manifest weight of the evidence. What we have here is a clear, undisputed work injury. There's immediate pain. There's no question of whether or not the accident happened. It was a witnessed accident in which my client, who had over 20 years of experience as a mechanic, was working on a car and a 200-pound gas tank came off of a car. He lost his footing. He fell backwards, landing on his upper body, on his shoulder and his upper back, and a 200-pound gas tank fell on top of him. Crushing him. He reported immediate pain. He went to the employer's work clinic, where he complained immediately that day within hours of pain in his shoulder going down into his arm. What we have is some confusing symptoms, because pain in the shoulder from the tear that he had, and it was a pretty big tear. It was a rotator cuff, labral, and bicep tear. And we also have symptoms of radiation into the arm. And unfortunately, those weren't properly diagnosed, because what happened is he was sent right away for an MRI of the shoulder, which showed the significant tear. And that's what the doctors did. They addressed what they thought the main injury was. Now, the Commission's decision, and counsel is brief, will have this Court believe that there wasn't causation in this case, because there's a passage of time between the date of accident and the emergence of symptoms. That's not what the record shows. Was there any passage of time at all? I don't think there was any passage of time. He complains on the date of accident of pain going into his arm. Two days later, when he has his follow-up at the Work Plus clinic, their own doctor notes paraspinal tenderness. They note, most importantly, an absent tricep reflex, which you then will find in the record that Dr. Lorenz says, in and of itself, is the very test that shows a problem in the nerve impingement on the C5-C6 nerve, which is exactly where his herniation is. And then within a week of that, he goes to his primary care doctor, who also notes that there is tenderness in the entire cervical spine going into the trapezoid area. And he orders that X-ray. Between November 29, 2006 and June 5, 2007, is there any medical documentation that the claimant reports any problems at all of neck symptoms? I think there is. I think it's, number one, as I said, it's the very first day on the date of accident, two days after after the date of accident, to his family practitioner within a week of the accident. And then what about after that? Wasn't there a six-month gap period, though? Well, what he does is they get an MRI of the shoulder. He gets sent to a shoulder specialist, Dr. Suchi. Dr. Suchi examines his shoulder. But what's interesting is that there's always noted weakness of the arm. Now, should Dr. Suchi have done a cervical exam? Should he have sent him for an MRI of the cervical spine? Maybe he should have. Unfortunately, that didn't happen in this case. But even post-surgery, the range of motion in the shoulder is increasing. His shoulder is getting stronger, but yet there's noted weakness in the arm. Throughout the physical therapy records post-operatively, and his surgery is in February, every single physical therapy record practically shows that he has pain in his neck. He has pain going down his arm. He has pain going into his fingers. He has numbness. He has tingling. He has problems holding objects. That's not consistent with a shoulder injury. How do you characterize the opinions of Dr. Orth and Dr. Goldberg as to whether or not they help the claimant or support the commission's decision? With regards to the cervical spine only? Yes. Well, I don't think Dr. Orth's opinion should have any credibility whatsoever. He laid out in his evidence deposition said that he's not trained to do cervical surgery. He's never done cervical surgery. And he would defer his opinions when he was treating and was actually practicing, because he has since retired and does this on the side, to a qualified neurosurgeon. Not an orthopedic surgeon, but a neurosurgeon. What about Dr. Goldberg? Well, Dr. Goldberg, in my opinion, for lack of a better way of saying it, he kind of takes a very easy way out of saying, eh, it's not related. Well, why is it not related? There is nothing in either his initial report or his addendum that explains how it's not related. All he says is, oh, it's an incidental finding. He doesn't note any preexisting condition. He doesn't note anything in the MRIs that show that there's a preexisting condition. He doesn't explain how the initial X-ray taken a few days or, I'm sorry, a week and a half after the accident shows absolutely no degenerative changes. And then the one taken by Dr. Lorenz two and a half years later shows degeneration. You're challenging the basis for the opinion because you're obviously aware of the very well-settled rule that it's up to the commission to judge the credibility of the witnesses and the weight to be given to their opinions. That's what they do. Correct. We just can't say we don't like this doctor, therefore the commission shouldn't have given any weight to the opinion. So you perceive, obviously, that both Orth and Goldberg are a problem for your case. I understand that they're a problem, but I also think that the fact that there is no finding of fact attached to this opinion and all we see is the causation and the arbitrator's decision and the commission taking that decision and saying, well, this is also our opinions with regards to medical and TTD, is that we have to see what they put. And all we have is their opinions on causation. It doesn't say here that they find the opinions more credible. It doesn't. It barely even weighs the opinions of Dr. Sitow or Dr. Lorenz. And it doesn't show anywhere in here how it is that Dr. Goldberg can say that these are incidental findings. It doesn't say that there's a preexisting condition. There's no proof of a preexisting condition. Dr. Goldberg doesn't even say that he thinks it's a preexisting condition. The only thing he says is that it's incidental. Counsel, doesn't the commission or the arbitrator, excuse me, specifically make findings adopting the findings of Drs. Orth and Goldberg? In the causation? They do. But I think that it's of note that these same opinions that the arbitrator and the commission adopted, they then supposedly adopt in their opinions with regards to medical as well as TTD. But how do they adopt the opinions of Dr. Orth, for example, with regards to causation and then not with regards to TTD? How do they adopt the opinions of Dr. Goldberg supposedly on causation as a whole, but then don't adopt those with regards to medical or TTD? We don't know almost what facts they relied upon because the opinion in and of itself is completely contradictory. You can't say I adopt this doctor's opinion on causation, but I don't believe it in TTD. Does it make any difference to your argument that Orth and Goldberg were willing to go as far as saying that the accident may have caused cervical strain, but that that was temporary in nature, and that the ultimate injury that Dr. Lorenz found, the C5-6 and C6-7 disc herniations, were not caused by the accident? Does that make any difference to you? Well, I think it does make it, I think it's very important because it's almost, if you take a look at the opinions of both of the doctors, Orth and Dr. Goldberg, originally they say, oh, there's no injury. But then they kind of backtrack and say, well, obviously the mechanism of injury, because they can't dispute that the mechanism of injury is very consistent with that, at minimum an acute injury to the cervical spine. So they do, both in their discovery, I'm sorry, in their evidence depositions, admit to that. But neither of them say, how is it that it returned to being a baseline? How is it that this condition is now not symptomatic? Neither of them provide any explanation for that. And the arbitrator just to say, oh, yeah, he's baseline by the time of the IME of Dr. Goldberg, just doesn't make any sense. There's no medical testimony as to say, how did he go from having an acute cervical sprain to not being a surgical candidate? So shifting from, you know, questioning the underlying basis of the opinions of Goldberg and Orth, do you have, is there medical testimony in here that causally connects your client's cervical condition and ill-being to the November 2006 accident? Do you have? Yes, by both Dr. Sitow and Dr. Lorenz. Dr. Lorenz, in his evidence deposition as well as in his medical records, goes very far in explaining how that acute cervical injury, which showed normal X-ray, progressed over time. He says it's consistent with Mr. Haynes' symptoms, which is another thing that was completely ignored in the record. There's nothing here with regards to the petitioner's testimony at the time of trial of his increasing symptom, which is at length in the record. And more importantly, Dr. Lorenz goes very clearly in showing how the X-rays, the MRIs, and the EMGs all show a natural progression of this acute cervical injury. How the fact that he had a shoulder injury and a cervical injury at the same time kind of masked the symptoms. They weren't able to really differentiate between the two. But the bottom line is, is he had pain going into his arm from the beginning. The fact that this wasn't diagnosed, unfortunately, is not the petitioner's fault. And the fact that a lot of his treatment wasn't authorized, that's the only thing that we can attribute some of the lapse of time to. The consistent complaints are there. They're documented not only in his testimony, but most importantly, throughout the medical. He has weakness of the arms. Kennedy. Let me ask you this, cutting to the chase. You have medical evidence to support the claimant, clearly. Correct. You have medical evidence on the other side to support the Respondent's position. So tell us, in summary, succinctly, why is the decision against the manifest weight, when you have conflicting opinions and you know the hurdle in the standard of proof? I think it's against the manifest weight of the evidence for two main reasons. The first is, is to adopt an opinion, there has to be a medical basis for that opinion. There is no medical basis offered in the evidence or in Dr. Goldberg or Dr. Orr's report that says how this is not the natural progression of the acute cervical injury that is undisputed. They can't explain it. To just say it's incidental, it can't be. And to then say that the reason they don't believe the symptoms, oh, because of their brief 15-minute examination each, they were diffuse. They were exaggerated. But yet Dr. Goldberg even admitted that Dr. Lorenz's multiple examinations and very detailed notes showed exact weakness and diminished strength and sensation at the exact levels of C5, C6, and C6, C7. So your first point is there's no medical basis to support the underlying opinion of Goldberg and Orr. What's the additional basis? The second basis is that I think the decision as a whole is against the manifest weight of the evidence because the facts are contradictory. You cannot say, and we'll just go with Dr. Orr first, you can't say Dr. Orr, who in his evidence deposition completely changes his testimony and goes from saying he can return to full-duty work to saying, oh, wait, that's right, he can't do full-duty work, he has to do light-duty work. The burden is on them that they proved anything more than full-duty work. And the arbitrator, in her causation opinion, and the commission adopted twice, twice in causation section says that the petitioner was released full-duty by Dr. Orr. That's not what the evidence is. He completely retracted that in his evidence deposition and said, no, you're right, he needs light-duty. They never offered light-duty. So we've got conflicting testimony. We're showing that this testimony and the medical evidence isn't consistent with the arbitrator's decision, clearly against the manifest weight of the evidence. Then we go to Dr. Goldberg. Dr. Goldberg says he's MMI only as to the cervical, he makes no opinion with regards to the shoulder, as of the March 2009 IME. Why does the arbitrator cut off TTD in 2007? That's also inconsistent, clearly against the manifest weight of the evidence. It doesn't make sense. You can't say I adopt these doctors' findings in causation and then ignore them in TTD and medical. Nowhere does Dr. Goldberg say that any of the medical that was rendered to Mr. Hain prior to March 2009 was not causally related to the work injury. It's not in there, but yet they don't award any medical. It doesn't make sense. It's clearly against the manifest weight of the evidence. And I think part of it is there wasn't a proper weighing of facts. We don't even know was there a weighing of facts. There's no finding of fact attached to this decision. And I think that the TTD and the credit issue, when looked even by itself, really shows that the decision when taken as a whole is clearly against the manifest weight of the evidence. It just doesn't make sense. Even Dr. Lamy, I think it's very important, respondent will put a lot of weight in the fact that petitioner's own treater didn't think he was a surgical candidate. He didn't think he was a surgical candidate in 2007. He gave him PT. He gave him medication. Then he said, okay, let's try some epidural injections. There was increasing interventional care that was suggested for the petitioner. The fact that his condition got worse over time is part of the natural consequence. The commission was wrong in saying what was he diagnosed with originally? They need to take a look at the natural progression of his injury. And that's what was ignored by the commission. And what I'm sorry to say was completely with all due respect, but ignored by the respondent in their brief. They can't explain what happened to the natural progression. They just want everyone to say, oh, it's incidental. Let's not look at that. And, you know, for that reason, I believe that the decision of the commission should be overruled as a whole. Thank you. Thank you, counsel. Counsel, respond. Thank you. Good morning. Justice Holdridge. Counsel, may it please the court, my name is John Bergen. I represent the employer Raymond Chevrolet here. The standard of review is whether or not the findings of fact of the commission, which are contained in the arbitrator's decision, are against the manifest weight of the evidence. The employer asks that this court review the decision and review the evidence here and confirm the decision of the circuit court. Counsel, obviously there's some conflicting medical evidence. The opponent has conceded that. Her issue is recognizing that she opines specifically there's no medical basis to support the opinions of your doctors, what is your response to that? Each of the doctors reviewed the medical records. They took a history from the claimant here. They performed an examination. They reviewed diagnostic studies and were asked based on a reasonable degree of medical certainty whether or not they had opinions. The basis is that, medical records, history, examination, which is typical for what examining physician or treating physician relies upon in formulating opinions. I don't understand how there's not a basis. I mean, it's clear that both doctors reviewed the medical records and each reached a conclusion at a different time. What's Orth's specialty? Dr. Orth, he was in occupational medicine. She was challenging his underlying... He testified that he's still qualified to give opinions as to cervical conditions. He still treats cervical conditions. He may not be an orthopedic expert or a neurosurgeon, but he still has the right. I mean, in this practice, we commonly use doctors that are not necessarily in the same field. It doesn't mean he can't give an opinion. In any event, the credibility and the weight of his opinion should go to the commission, right? Absolutely correct. And to further substantiate Dr. Goldberg's and Dr. Orth's opinion as to the need for surgery on this alleged not-related cervical condition, it's supported by Dr. Lamme. He's the treating physician who was referred by the claimant's primary care physician and rendered an opinion in 2007 that this was not a surgical condition. The claimant is asking you to judge the credibility of the witnesses. She's asking you to resolve conflicts in the testimony, make choices. She's asking you to choose Dr. Lorenz over Dr. Goldberg, over Dr. Orth, over Dr. Lamme. She's asking this court to ignore the fact that the claimant admitted when he first visited Old Orchard he had no treatment in regard to the neck. He did make some arm complaints. Dr. Pawlowski did order an X-ray on November 29th. When the claimant returned to Dr. Pawlowski in December, I think it was December 13th, he gave no treatment, ordered no further diagnostic studies in regard to the neck. When the claimant visited Dr. Suchi, the treating surgeon, he filled out a questionnaire. No complaints about the arm. No complaints of numbness. Throughout the course of treatment from November 29th until the claimant contacted Dr. Pawlowski on June 19th, there was no mention by a physician that this claimant had either neck complaints or cervical complaints, reflecting that the condition found later, the C5-C6, was causally related. There's three periods you can look at. The initial treatment, he admitted that he didn't have any treatment to the neck. There was no significant treatment given other than one diagnostic study, which apparently did not alert Dr. Pawlowski to refer the claimant for any further neck treatment. The next question is the second period, which affects TTD and also the credibility of what was causing his complaints in July of 2007. As to TTD, he was released to light duty by Dr. Suchi. He returned to the employer and worked for a period of time. Dr. Suchi recommended that the claimant have an FCE. Rather than have the FCE or continue to work light duty, which was prescribed by Dr. Suchi, he chose to no longer work, didn't go back to Dr. Suchi, didn't take the FCE, but went to Dr. Pawlowski. So in terms of TTD, the arbitrator's decision is based on the fact that the claimant was working within the restrictions of his position, and then he chose to no longer work. And his testimony regarding why he missed some days, if you look at the record, it's just absolutely not credible. He testifies at one point that he had to miss several days to physical therapy. He only had two days of physical therapy during that period. The other question is the need for the cervical MRI. Dr. Pawlowski in his records clearly shows that some event occurred on July 9, 2007, triggering extreme pain in the lower lumbar area as well as the cervical. So if you look at those two periods of the initial treatment, the period of TTD when he could have continued to work and he apparently chose not to, it casts just enormous doubt on the credibility of the argument that this injury caused cervical herniated discs. Now in regard to the question about surgery, first of all you have a treating physician, Dr. Lamy, saying surgery is not recommended. The next doctor to examine is Dr. Sittow in 2008, which is over two years later, and then finally Dr. Lorenz. The arbitrator wrote a very well-reasoned decision listing the opinions of the various doctors. She adopted Dr. Orth, she adopted Dr. Lamy, the treating physician, she adopted Dr. Goldberg, and she rejected Dr. Lorenz's opinion. And there is a question to me whether or not Sittow actually has a causation opinion. What he cites is a history of the incident and then says he has the cervical condition. What we do is we're slicing and dicing, we're parsing the evidence, we're doing exactly what the commission's job is. They state that they reviewed the evidence, the arbitrator states that she reviews the evidence, she reviews the evidence in the decision, it's well-reasoned, it's not only rational, but it is the preponderance of the evidence, the commission reviewed it, we're here trying to slice and dice it, it doesn't make any sense, it's a manifest weight. So on the issue of causation, medical, future medical, and TTD, the employer asks that this court confirm the judgment of the circuit court. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. Counsel said a lot of things in his argument. There's two very key things that he forgot to mention. First is, there's no proof that my client was ever released to full duty with regards to his shoulder injury by any doctor. And more importantly, there's no proof, and it's their burden, that they gave him anything but full duty work. Completely ignored the issue. It is that very issue that casts doubt on the entire decision when read as a whole. It's against the manifest weight of the evidence. You cannot sit and say that you adopt the opinions of Dr. Orth, of Dr. Lamme, and of Dr. Goldberg, and cut off TTD in June of 2007. It just doesn't make sense. It's contrary. It's against the manifest weight of the evidence. Now, counsel went on a lot to say that there's no treatment to the cervical spine. The lapse of time is because there's no treatment. Well, there's still symptoms. The fact that his treatment was confused because of the injury to the cervical spine and the shoulder, it's not his fault. He made complaints, consistent complaints. This isn't a case where he shows up at arbitration two years later and starts complaining, oh, yeah, it was hurting the entire time, but it's nowhere in the medical. It's consistently documented. Everywhere. The fact that the doctors failed to notice that there was a significant cervical injury until he has to the point of where in physical therapy he goes into work hardening, and he can't even lift things, and he's dropping things, that's part of the natural consequence. There is nothing here to break the chain. There's no argument of a preexisting condition. Dr. Goldberg saying that this is an incidental finding, that it's not consistent with the MRI findings, it's not there. I think it's very important that Dr. Goldberg doesn't review all of the evidence. He renders his opinions without the EMG. The EMG is very clear. Bilateral polyradiculopathy in both arms. It's completely consistent with Dr. Lorenzo's examination, Dr. Sitow's examination, and the petitioner's testimony and symptoms throughout the medical records. Dr. Goldberg doesn't explain that in anything. Dr. Goldberg also goes on to say when we show him at his evidence deposition the new MRI, which he didn't have a chance to review prior to rendering his opinions, he goes, oh, yeah, there's definitely changes in there, and that would probably attribute for his bilateral pain. And when asked, well, do you think it's causally related? Oh, no, that's just not possible. It's too far away from the injury. Well, do you have any proof that he has any intervening accident or any subsequent accident? Nothing. There's nothing there. And the fact is, is that my client was taken off of work by Dr. Peblowski, who finally noticed the cervical condition. Dr. Suchi, all he did was notice the weakness in the arm. He said, I can't help you. The petitioner testified that Dr. Suchi said, hey, if you're having additional complaints, go see your family doctor. See if he'll refer you somewhere. And that's exactly what Dr. Peblowski did when he referred him for the MRIs and admitted him into the hospital to get those MRIs. And the fact that Dr. Lamy didn't suggest surgery in 2007, we all know that most cervical and all spine and most spine surgeries are semi-elective or elective. There's very rare, unless you've got a fracture, that someone's going to say, we need to operate right away. They're going to try conservative care. And that's what happened here. We have some confusing symptoms between a shoulder and a cervical spine injury, but we have consistent complaints. We've got some conservative treatment. We've got failure to respond to that conservative treatment. And then a surgical recommendation by not one, but two doctors, a neurosurgeon and an orthopedic surgeon. The only two that provided the most detailed examinations and that saw all of the diagnostic tests. And they provide a very clear picture of how this acute injury over time got worse. Therefore, we ask that you reverse the decision of the commission on all accounts. But at minimum, we ask, even if you do decide to uphold the causation opinion, which, again, it is our position that it's also against manifest weight of the evidence, the issue with regards to medicals and TTD, per Dr. Goldberg's own IME and evidence deposition, should be given through his IME date of March 16th, 2009. And I also believe that ongoing TTD should be issued per Dr. Orr's opinion with regards to the fact that there is a light-duty restriction with regards to the shoulder condition and no proof by the employer that anything other than full duty was ever offered to the employee. Thank you. Thank you, counsel. The matter will be taken under advisement and written disposition will issue.